Galen NORTON, Petitioner,

v.

**WORKERS' COMPENSATION APPEAL BOARD (Max NORTON), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Aug. 11, 2000.

Decided Dec. 29, 2000.

---

Gary L. Black, Canton, for petitioner.

Laura T. Macaravage, Kingston, for respondent.

Before DOYLE, President Judge, LEADBETTER, Judge and LEDERER, Senior Judge.

LEADBETTER, Judge.

Claimant Galen Norton appeals from the order of the Workers' Compensation Appeal Board (Board), which affirmed the grant of claimant's petition for workers' compensation benefits. On appeal, claimant challenges the calculation of his average weekly wage (AWW). After review we affirm.

Claimant sustained a work-related back injury in 1996. At the time of his injury, he was employed by Norton's Excavating, a business run by his brother. Thereafter, claimant filed a claim petition and during the litigation that followed, the parties entered into a stipulation, agreeing that (1) claimant's injury was work-related, (2) claimant's injury rendered him totally disabled as of November 21, 1996, and (3) claimant would receive weekly compensation in the amount of $312.44, based on an AWW of $468.67, until the Workers' Compensation Judge (WCJ) resolved the issue of claimant's AWW.

In support of its position that claimant's AWW was $468.67, employer submitted a statement of wages which indicated that it had paid claimant the following amounts during the last four consecutive thirteen-week periods preceding the injury: (1) from October 8, 1995 through January 8, 1996, employer paid claimant $3,255.00; (2) from January 9, 1996 through April 8, 1996, employer paid claimant $467.25; (3) from April 9, 1996 through July 8, 1996, employer paid claimant $7,578.25; and (4) from July 9, 1996 through October 7, 1996, employer paid claimant $6,815.00. In addition, employer paid claimant a vacation benefit in the amount of $840.00. Based on the aforesaid payments, employer argued that claimant's AWW should be computed pursuant to Section 309(d) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d).

Claimant submitted his own proposed statement of wages, which reflected the same earnings. Claimant's statement, however, indicated an AWW of $569.75, which he calculated pursuant to Section 309(d.1) of the Act, 77 P.S. § 582(d.1). In addition, claimant testified that since 1989, he has worked only for Norton's Excavating. According to claimant, there were periods of time when he did not work because his brother would go on vacation and shut down the business while he was away. Claimant did not apply for unemployment compensation during the periods when the business was shut down. According to claimant, he always intended to return to work with Norton's Excavating following a period of shut down. Finally, claimant submitted pay records, which indicated that he did not work from December 19, 1995 to March 30, 1996, during which time his brother was on vacation and work was not available.

Based on the evidence presented, the WCJ concluded that claimant's AWW was $468.67 as employer had calculated, which rendered a weekly compensation rate of $312.44. In reaching this conclusion, the WCJ stated as follows:

[T]his Judge finds it significant that the Claimant was employed by the Employer since 1989 on a continuous basis. While there were times that the Claimant did not work due to vacation by the Defendant/Employer, the Employe/Employer status between the Claimant and the Employer still existed even though no work was performed. The Claimant himself acknowledged he has not worked for anyone else since 1989 and was never laid off. As Claimant's injury was after June 24, 1996, Claimant's benefits are calculated under the provisions of Act 57.

*Norton v. Norton,* slip. op. at 4 (Decision and order of WCJ, dated January 25, 1999). The Board affirmed and the present appeal followed.[1]

The issue presented is whether claimant's failure to work three full consecutive thirteen-week periods prior to his injury requires application of Section 309(d.1) to calculate the AWW despite the fact that the claimant maintained an employment relationship with his employer during those periods when work was not available. Section 309(d.1) provides as follows:

> If the employe has not been employed by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

77 P.S. § 582(d.1). Claimant argues that the term "employed" as used in Section 309 is synonymous with the performance of services for remuneration. According to claimant, since he only performed services for employer during two "completed" thirteen-week periods prior to his injury, Section 309(d.1) governs the computation of his AWW.[2] On the other hand, employer contends that the Board and WCJ properly calculated claimant's AWW pursuant to Section 309(d) of the Act, 77 P.S. § 582(d), which provides:

> If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c) [none of which applies to claimant in the present case], the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

In arguing that the Board and WCJ correctly calculated claimant's AWW, employer relies on *Sheesley Co. v. Workmen's Compensation Appeal Board (Brant),* 106 Pa.Cmwlth. 227, 526 A.2d 450 (1987), a pre-Act 57 case, to support its interpretation of the term "employ."[3] In *Sheesley,* the issue before this court was whether the claimant's pre-injury AWW should be calculated pursuant to former Section 309(d) or (e). Former Section 309(d) provided for the computation of the AWW as "the wage most favorable to the employe, computed by dividing by thirteen the total wages of said employe earned ... in the first, sec-

---

1. As the determination of a claimant's AWW is a question of law, our review on appeal is plenary. *Eljer Ind. v. Workmen's Compensation Appeal Bd. (Johnson),* 670 A.2d 203, 205 n. 8 (Pa.Cmwlth.1996).

2. In making this argument, claimant relies on the definition of the term "employ" as found in Webster's Third New International Dictionary as well as this court's opinion in *Triangle Building Center v. Workers' Compensation Ap-*

peal Board (Linch), 711 A.2d 1109 (Pa. Cmwlth.1998), *rev'd,* 560 Pa. 540, 746 A.2d 1108 (2000). The analysis relied upon in our opinion in *Triangle Building Center,* however, was rejected by the Supreme Court on appeal.

3. The Act of June 24, 1996, P.L. 350 (Act 57), amended Section 309 by rewriting subsections (d) and (e) and inserting subsections (d.1) and (d.2).

ond, third, or fourth period of thirteen consecutive calendar weeks in the fifty-two weeks immediately preceding the injury...." In turn, former Section 309(e) provided:

> If under clauses (a), (b), (c), (d) and (e) of this section, the amount determined is less than if computed as follows, [this] computation shall apply, viz.: Divide the total wages earned by the employe during the last two completed calendar quarters with the same employer by the numbered days he worked for such employer during such period multiplied by five.

There, the claimant worked ten days in the first quarter, 30 days in the second quarter, no days in the third quarter, and five days in the fourth quarter preceding his injury. The employer argued that since claimant did not work the full two quarterly periods preceding his injury, the optional calculation of former Section 309(e) did not apply. This court concluded that the claimant's AWW was properly calculated pursuant to former Section 309(e) despite the intermittent nature of the work schedule. In doing so, we stated:

> The employer here does not contend that claimant's employment was seasonal so as to implicate the computation in Section 309(e) for seasonal occupation. Nor does the employer contend that claimant was discharged after periods of employment and re-hired in subsequent quarters. Indeed, the employer states in its brief that "claimant, with the exception of layoffs, was employed continuously for the year preceding the accident." We conclude that, as in *Romig [v. Champion Blower & Forge Co.*, 315 Pa. 97, 172 A. 293 (1934)], the claimant's employment was continuous, although the number of days actually worked was sporadic.

526 A.2d at 452.

Employer also draws our attention to *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000), wherein our

Supreme Court addressed whether the temporary lay-off of a claimant from concurrent employment precludes inclusion of the concurrent earnings within the AWW calculation. There, at the time of the claimant's work injury, he was temporarily laid off from his concurrent employment and was receiving unemployment compensation benefits. The credited evidence demonstrated that the claimant was required to call the concurrent employer on a daily basis to determine whether work was available for the next day. An employee who failed to call in on two successive days was deemed to have quit. According to the evidence, the claimant did call in on a daily basis during the time period when he was laid off. Based on such evidence, the WCJ concluded that at the time of the claimant's injury, he had concurrent employment for purposes of determining his AWW. The Board affirmed and this court reversed, concluding that a claimant must actually be working in the concurrent employment such that he is actually performing services in exchange for consideration in order for concurrent earnings to be included in the benefits calculation. On appeal, the Supreme Court reversed, stating:

> We believe that the General Assembly directed inclusion of concurrent wages in the benefits computation ... to create a reasonable picture of a claimant's pre-injury earning experience for use as a projection of potential future wages and, correspondingly, earnings loss. Thus, we find that in order for an employment relationship to constitute concurrent employment for purposes of Section 309(e), the relationship must remain sufficiently intact such that the claimant's past earning experience remains a valid predictor of future earnings loss.

560 Pa. at 548–49, 746 A.2d at 1112–13 (footnote omitted). *See also Hoffman v. Workers' Compensation Appeal Bd. (Acme Markets, Inc.)*, 716 A.2d 711 (Pa.Cmwlth. 1998).

■ Both *Sheesley and Triangle Building Center* demonstrate that the term "employ" as used in Section 309 is not limited to the actual days an employee works for wages, but encompasses the period of time that an employment relationship is maintained between the parties. Therefore, we reject claimant's argument that the term "employ" must be limited to those situations where the claimant is actively engaged in the performance of services for compensation.[4] Accordingly, based on the unappealed findings of the WCJ, we conclude that claimant was employed during the four consecutive thirteen-week periods preceding his injury. Therefore, neither the WCJ nor the Board erred in calculating his average weekly wage pursuant to Section 309(d).[5]

Accordingly, for the foregoing reasons, the order of the Board is affirmed.

### ORDER

AND NOW, this 29th day of December, 2000, the order of the Workers' Compensation Appeal Board in the above captioned matter is AFFIRMED.

4. We also reject claimant's contention that *Sheesley* is distinguishable because it is a pre-Act 57 case. Claimant has pointed to no authority which would support a conclusion that the legislature intended the terms "employ" or "employed" to be interpreted differently post-Act 57.

5. Application of Section 309(d) serves the goal of providing a more accurate picture of claimant's pre-injury earning.