**Jeffrey D. MERKLE, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HOFMANN INDUSTRIES), Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Feb. 1, 2002.
Decided April 23, 2002.

Thomas J. O'Brien, Philadelphia, for petitioner.

Stephen J. Harlen, Philadelphia, for respondent.

BEFORE: FRIEDMAN, J., LEAVITT, J., and FLAHERTY, Senior Judge.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d).

OPINION BY Judge FRIEDMAN.

Jeffrey D. Merkle (Claimant) petitions for review of the August 17, 2001 order of the Workers' Compensation Appeal Board (WCAB), affirming the decision of the workers' compensation judge (WCJ) to deny Claimant's petition to review the notice of compensation payable. In his petition, Claimant alleged that his average weekly wage was not calculated properly. We affirm.

On February 26, 1997, while employed with Hofmann Industries (Employer), Claimant sustained a work-related injury to his left arm. Pursuant to a notice of compensation payable, Claimant received compensation benefits at the rate of $399.93 per week, based on an average weekly wage of $599.90. (WCJ's Findings of Fact, Nos. 3 and 5.) On March 24, 1997, Claimant returned to work with Employer with no loss of earnings. (WCJ's Findings of Fact, No. 6.) However, on June 27, 1997, Claimant again sustained a loss of earning power, and his compensation benefits were reinstated. (WCJ's Findings of Fact, No. 6.) Thereafter, between June 27, 1997 and March 13, 1998, Claimant returned to work with Employer for various periods of time, and the appropriate supplemental agreements were executed. On March 13, 1998, Claimant sustained a separate work-related injury to his left upper arm, which is the injury at issue in this case, and, pursuant to a notice of compensation payable, he began receiving compensation benefits for this second injury at the rate of $280.50 per week, based on an average weekly wage calculated to be $326.81. (WCJ's Findings of Fact, Nos. 1, 2, 4 and 6.) In calculating Claimant's average weekly wage, Employer used the formula set forth in section 309(d) of the Workers' Compensation Act [1] (Act).

Claimant then sought review of the notice of compensation payable,[2] arguing that Employer had erroneously calculated his average weekly wage under section 309(d) of the Act, resulting in an artificially low average weekly wage. Claimant argued that, instead, Employer should have used the formula set forth in section 309(d.1) of the Act, 77 P.S. § 582(d.1), to calculate his average weekly wage. However, the WCJ concluded that Employer correctly calculated Claimant's average weekly wage pursuant to section 309(d) and, thus, denied Claimant's petition to review the notice of compensation payable. Claimant appealed to the WCAB, which affirmed.

 Claimant now petitions this court for review of the WCAB's order,[3] arguing that his average weekly wage should be calculated pursuant to section 309(d.1) rather than 309(d).

Section 309 of the Act provides, in pertinent part:

Wherever in this article the term "wages" is used, it shall be construed to mean the average weekly wages of the employe, ascertained as follows:

. . . .

(d) If at the time of the injury the wages are fixed by any manner not enumerated in clause (a) [weekly], (b) [monthly] or (c) [yearly], the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods.

(d.1) If the employe *has not been employed* by the employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury, the average weekly wage shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

77 P.S. § 582(d) and (d.1) (emphases added).

Based on section 309(d), Employer relied on Claimant's actual earnings for the fifty-two week period immediately preceding his March 13, 1998 injury, including those periods when Claimant had reduced earnings due to his 1997 work-related injury, to calculate Claimant's average weekly wage. (WCJ's Findings of Fact, No. 7.) Specifically, during the last four consecutive thirteen-week periods immediately preceding Claimant's March 13, 1998 injury, his wages were as follows: (1) $2,667.77 for the first period, March 13, 1997 to June 13, 1997; (2) $662.07 for the second period, June 14, 1997 to September 13, 1997; (3) $617.58 for the third period, September 14, 1997 to December 13, 1997; and (4)

---

2. Originally, on July 13, 1998, Claimant filed a claim petition alleging disability from June 8, 1998 onward as a result of his March 13, 1998 injury. (R.R. at R1–9.) However, because Employer already had acknowledged liability for that second injury pursuant to a notice of compensation payable, Claimant amended his claim petition to seek review of the notice of compensation payable.

3. The determination of a claimant's average weekly is a question of law; therefore, our review is plenary. *Port Authority of Allegheny County v. Workers' Compensation Appeal Board (Cooley)*, 773 A.2d 224 (Pa.Cmwlth. 2001).

$6,201.68 for the fourth period, December 14, 1997 to March 13, 1998. (R.R. at R129.)

Claimant contends that Employer should not have included the periods during which he received workers' compensation benefits in the calculation of his average weekly wage because a period of work-related disability suspends the employment relationship. In essence, Claimant argues that we should interpret the word "employed" in section 309 to mean "worked." We disagree with Claimant's position.

This court has previously held that "the term 'employ' or 'employed' as used in Section 309 is not limited to the actual days an employee performs work, but encompasses the period of time that an employment relationship is maintained between the parties." *Port Authority of Allegheny County v. Workers' Compensation Appeal Board (Cooley)*, 773 A.2d 224, 229 (Pa.Cmwlth.2001); *see also Norton v. Workers' Compensation Appeal Board (Norton)*, 764 A.2d 704 (Pa. Cmwlth.2000). Additionally, we have held

---

**4.** During the fifty-two week period immediately preceding Claimant's March 13, 1998 injury, Claimant worked and earned wages during some *portion* of each of the first three thirteen-week periods. However, Claimant apparently worked throughout the *entire* fourth thirteen-week period, (O.R., Exhibit C 2), thus, section 309(d.2) is not applicable to the calculation of Claimant's average weekly wage. *See* 77 P.S. § 582(d.2) (emphasis added) (setting forth the method of calculating the average weekly wage where the claimant has "*worked* less than a complete period of thirteen calendar weeks and does not have fixed weekly wages"); *Bethlehem Structural Products v. Workers' Compensation Appeal Board (Vernon)*, 789 A.2d 767 (Pa.Cmwlth. 2001) (holding that, where a claimant is employed and receiving accident and sickness disability benefits prior to the work injury and is injured *twelve weeks* after returning to work, only those earnings for time actually

that "Section 309(d.1) is applicable where an employee has not maintained an employment relationship with the employer during the three consecutive periods of thirteen calendar weeks preceding the injury." *Port Authority*, 773 A.2d at 229.

Here, the record establishes that Claimant had an employment relationship with Employer during each of the four consecutive thirteen-week periods comprising the fifty-two week period immediately preceding his March 13, 1998 injury. Indeed, this is made obvious by the Statement of Wages, which shows that Claimant earned wages during each of these four consecutive thirteen-week periods.[4] Clearly, then, even if his *work* was interrupted, Claimant maintained an employment relationship with Employer during each of those four periods.[5] Because Claimant had an employment relationship with Employer for at least three consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding his March 13, 1998 injury, section 309(d.1), by its clear language, does not apply here, *see* 77 P.S. § 582(d); *Port Authority*, and Employer's

---

"worked" are relevant for purposes of calculating benefits under section 309(d.2)).

**5.** The fact that Claimant did not actually work during each week in the first three periods is of no import here. *See Port Authority* (holding that section 309(d), rather than 309(d.1), applied despite the fact that the claimant *worked* during only two thirteen-week calendar periods prior to the injury, because the claimant and employer maintained an employment relationship during three consecutive periods of thirteen calendar weeks); *Norton* (holding that where the employer paid the claimant during the four consecutive thirteen-week periods preceding his injury, even though there were times that the claimant did not *work*, the claimant was *employed* during the four periods, and, therefore, section 309(d) applied).

calculation under section 309(d) was proper.

Accordingly, we affirm.

*ORDER*

AND NOW, this 23rd day of April, 2002, the order of the Workers' Compensation Appeal Board, dated August 17, 2001, is hereby affirmed.