**Georgia REBEL, Petitioner**

v.

**WORKERS' COMPENSATION APPEAL BOARD (EMERY WORLD WIDE AIRLINES # 150), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Feb. 2, 2004.

Decided March 16, 2004.

---

Daniel K. Bricmont, Pittsburgh, for petitioner.

Paul S. Mazeski, Pittsburgh, for respondent.

BEFORE: PELLEGRINI, Judge LEAVITT, Judge and JIULIANTE, Senior Judge.

OPINION BY Senior Judge JIULIANTE.

Georgia Rebel (Claimant) petitions for review of the May 29, 2003 order of the Workers' Compensation Appeal Board (Board) that affirmed the decision of the Workers' Compensation Judge (WCJ) granting Claimant's claim petition and directing that Emery World Wide Airlines # 150 (Employer) pay Claimant $305.50 in weekly compensation benefits based on an average weekly wage (AWW) of $386.91. Claimant contends that the WCJ and the Board erred in calculating Claimant's AWW under Section 309(d) of the Work-

ers' Compensation Act (Act)[1] and, alternatively, that Section 309 of the Act violates her right to equal protection of the laws under both the Pennsylvania and the United States Constitutions. We affirm.

On November 6, 2000, Claimant filed a claim petition alleging that on July 12, 2000 she sustained a work-related injury to her upper back and neck. Claimant thereafter amended her petition to include a shoulder injury. Employer filed a timely answer denying Claimant's material allegations.

Before the WCJ, both parties presented evidence, including expert medical testimony. The WCJ accepted Claimant's medical evidence as more credible than that offered by Employer and found that Claimant sustained a work-related injury in the nature of a cervical strain/sprain with radiculopathy and a left shoulder injury, which involved a rotator cuff tear.

As a result, the WCJ awarded Claimant total disability benefits for the period of July 29, 2000 to July 16, 2001, the date she returned to work at a light-duty position at H.J. Heinz, Inc. The WCJ found that as of that date, Claimant was entitled to partial disability benefits consistent with her earnings at the Heinz job.

The WCJ also found that the parties were unable to stipulate as to a specific AWW for Claimant. Claimant maintained that her AWW should be calculated under either Sections 309(d.1) or 309(d.2) of the Act, 77 P.S. §§ 582(d.1) or 582(d.2). Section 309(d.1) provides:

> If the employe has not been employed by the employer for at least three consecutive periods of thirteen calendar

weeks in the fifty-two weeks immediately preceding the injury, the [AWW] shall be calculated by dividing by thirteen the total wages earned in the employ of the employer for any completed period of thirteen calendar weeks immediately preceding the injury and by averaging the total amounts earned during such periods.

Section 309(d.2) provides:

> If the employe has worked less than a complete period of thirteen calendar weeks and does not have fixed weekly wages, the [AWW] shall be the hourly wage rate multiplied by the number of hours the employe was expected to work per week under the terms of employment.

Conversely, Employer submitted a statement of wages to the WCJ showing an AWW of $386.91 based on calculations under Section 309(d) of the Act, 77 P.S. § 582(d). Section 309(d) provides:

> If at the time of the injury the wages are fixed by any manner not enumerated in clause (a), (b) or (c),[2] the [AWW] shall be calculated by dividing by thirteen the total wages earned in the employ of the employer in each of the highest three of the last four consecutive periods of thirteen calendar weeks in the fifty-two weeks immediately preceding the injury and by averaging the total amounts earned during these three periods. (Footnote added.)

The WCJ determined that case law indicated that Section 309(d), rather than Sections 309(d.1) or 309(d.2), provided the proper method for calculating Claimant's

---

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. § 582(d).

2. Pursuant to Sections 309(a), (b) and (c), 77 P.S. § 582(a), (b) and (c), if wages are fixed by the week, that would be the AWW; if wages are fixed by the month, the monthly amount is multiplied by 12 then divided by 52, which will yield the AWW; if wages are fixed by the year, that amount is divided by 52, which will yield the AWW.

benefits. Consequently, the WCJ concluded as a matter of law that Employer established that Claimant's AWW was $386.91, which yielded a weekly compensation rate of $305.50.

On appeal to the Board, Claimant argued that the WCJ miscalculated her AWW. Claimant maintained that the $386.91 figure was artificially low and therefore did not reflect her actual pre-injury weekly earnings. Claimant asserted that she missed a substantial amount of work during the four consecutive thirteen-week periods due to maternity leave. Claimant also argued that Section 309(d) violated her right to equal protection of the laws under both the United States and Pennsylvania Constitutions inasmuch as it diminished her right to workers' compensation benefits based solely on her gender.

The Board rejected Claimant's argument that Section 309(d) did not provide the proper means to determine her AWW. Citing *Norton v. Workers' Compensation Appeal Board (Norton)*, 764 A.2d 704 (Pa. Cmwlth.2000), the Board noted that the term "employ" in Section 309 is not limited to actual days that an employee worked for wages, but rather encompassed the period of time that an employment relationship was maintained. The Board also relied on this Court's decision in *Collier v. Workers' Compensation Appeal Board (PRS/Engles Trucking)*, 805 A.2d 1267 (Pa.Cmwlth.2002), *appeal denied*, 572 Pa. 759, 818 A.2d 505 (2003), wherein we reasoned that when employment is not permanently terminated, a thirteen-week period for purposes of a Section 309(d) AWW calculation included days not worked for vacation or illness.

In view of *Norton* and *Collier*, the Board determined that Claimant was continuously employed for purposes of Section 309 during her absence from work. The Board noted that Claimant's employment was not severed while she was on maternity leave and that she returned to work at the end of her leave. In support of its determination, the Board noted that Claimant did not have to reapply or interview for her job in order to resume work. As a result, the Board affirmed.[3]

■ Claimant's petition for review to this Court followed. On review, we are limited to determining whether the necessary findings of fact are supported by substantial evidence, whether errors of law were made, or whether constitutional rights were violated. *Morris Painting, Inc. v. Workers' Compensation Appeal Board (Piotrowski)*, 814 A.2d 879 (Pa. Cmwlth.2003).

## I.

■ Claimant's first argument is that the WCJ and the Board erred in applying Section 309(d) of the Act in this matter. Initially, Claimant cites *Triangle Bldg. Ctr. v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 746 A.2d 1108 (2000) for the proposition that a claimant's AWW calculation must reasonably reflect the claimant's pre-injury earning experience in order to be an accurate predictor of her future earning potential. Claimant also cites Bethlehem Structural Prods. v. Workers' Compensation Appeal Board (Vernon), 789 A.2d 767 (Pa.Cmwlth.2001), *appeal denied*, 568 Pa. 706, 796 A.2d 986 (2002), for the rule that Section 309 must be interpreted as a whole to reflect an AWW that reasonably reflects the reality of the claimant's pre-injury earning experience.

3. The Board noted that it did not have the authority to address the constitutional issues raised by Claimant.

In *Vernon*, although the claimant was employed during the year preceding his work injury and did not receive a fixed wage, he never worked for a complete 13 calendar-week period. We reasoned that because the claimant worked for less than a full 13 calendar-week period, his average weekly wage must be calculated under Section 309(d.2), *i.e.*, his hourly wage rate multiplied by the number of hours he was expected to work per week under the terms of his employment.

*Vernon*, however, is distinguishable from the case at bar. In *Vernon*, the claimant worked only 11 of 13 weeks in the initial 13 calendar-week period preceding his injury; he did not work at all during the remaining three 13 calendar-week periods preceding his injury. In *Vernon*, we concluded that Section 309(d.2) was the correct provision to be applied because Section 309(d.2) is not concerned with whether the claimant was employed, but rather whether he failed to work for a complete 13 calendar-week period preceding the injury without receiving a fixed weekly wage.

Claimant also cites *Colpetzer v. Workers' Compensation Appeal Board (Standard Steel)*, 802 A.2d 1233 (Pa.Cmwlth.2002), *appeal granted*, 573 Pa. 660, 820 A.2d 163 (2003), where this Court recognized that even where the claimant was employed for the 52 weeks prior to his work injury, Section 309(d) should not be applied in a manner that results in an artificially low AWW which does not reasonably reflect the reality of the claimant's pre-injury earning experience as a predictor of his future earning potential.

In *Colpetzer*, however, we did conclude that Section 309(d) was the appropriate provision, but that the WCJ erred in failing to include the claimant's established AWW for a five-month period of disability during the 52 week period immediately preceding the work injury at issue in that case. As a result, we believe that Claimant's reliance on *Colpetzer*, for the proposition that Section 309(d) is inapplicable, is misplaced.

In light of *Norton* and *Collier*, we believe that the Board properly affirmed the WCJ's determination of Claimant's AWW. With regard to Claimant's absence due to her maternity leave,[4] we recognized in *Collier* that even where the claimant was laid-off or off work due to a non-work related disability, the employee nevertheless maintained a relationship with the employer and should be considered "employed" for those time periods for purposes of calculating the claimant's AWW under Section 309. In particular, we noted in *Collier* that where the claimant was not *permanently* terminated from employment, *i.e.*, the employee was not required to reapply or re-interview to begin working again, the employment relationship continues for purposes of AWW calculation under Section 309.

As the WCJ stated in her Finding of Fact No. 26, "Claimant was on unpaid maternity leave from approximately April through November 30, 1999." WCJ's Decision at 8. In applying the *Collier* and

---

4. Claimant, nonetheless, asserts in her brief that she did not maintain an employment relationship with Employer inasmuch as she was terminated, brought a discrimination claim and then was rehired. A review of the record, however, indicates that Claimant failed to raise this issue either before the WCJ or the Board. Accordingly, it must be considered waived. Pa. R.A.P. 1551(a); *Kelly v. Workmen's Compensation Appeal Board (Pepsi Cola Bottling Co. of Philadelphia)*, 166 Pa. Cmwlth. 618, 647 A.2d 275 (1994). Further, insomuch as Claimant did not raise this issue in her petition for review, it is not properly before us. Pa. R.A.P. 1513(a); *Teledyne McKay v. Workmen's Compensation Appeal*

*Norton* rationale to the facts in the present case, we agree with the Board that Claimant was continuously employed during the period of her maternity leave for purposes of calculating her AWW under Section 309(d). Consequently, because Claimant was continuously employed by Employer for the four 13 calendar-week periods immediately preceding her July 12, 2000 work injury, we conclude that the WCJ did not err in calculating her AWW under Section 309(d). *Norton.*

## II.

■ Claimant's second argument is that Section 309 of the Act is unconstitutional inasmuch as it violates her right to equal protection of the law under both the United States and Pennsylvania Constitutions. Specifically, Claimant contends that Section 309 diminishes her property right by reducing the value of her workers' compensation benefits based upon her gender because only women become disabled due to pregnancy.

In support of her position, Claimant cites *Anderson v. Upper Bucks County Area Vocational Technical Sch.*, 30 Pa. Cmwlth. 103, 373 A.2d 126 (1977), where this Court affirmed a decision of the Pennsylvania Human Relations Commission which held that a pregnancy-related disability must be treated in the same manner as any other disability and an employer's disability plan that treats a pregnancy-related disability different from other disabilities constitutes sex-based discrimination in violation of Section 5(a) of the Pennsylvania Human Relations Act.[5] In short, we recognized in *Anderson* that a pregnancy-related disability cannot be treated differently from a non-work-related disability based on sickness or injury.

Board (Osmolinski), 688 A.2d 259 (Pa. Cmwlth.1997).

With regard to the present case, our state Supreme Court has recognized that "[t]he equal protection provisions of the Pennsylvania Constitution are analyzed by this Court under the same standards used by the United States Supreme Court when reviewing equal protection claims under the Fourteenth Amendment to the United States Constitution." *Love v. Borough of Stroudsburg*, 528 Pa. 320, 325, 597 A.2d 1137, 1139 (1991). *See also Commonwealth v. Albert*, 563 Pa. 133, 758 A.2d 1149 (2000). "The initial determination that must be made is whether the statute creates a classification." *McCusker v. Workmen's Compensation Appeal Board (Rushton Mining Co.)*, 536 Pa. 380, 384, 639 A.2d 776, 778 (1994).

In the case *sub judice*, we do not believe that Section 309 of the Act creates any classification based upon gender in determining the proper method to use for calculation of a claimant's AWW. Rather, Section 309 treats all absences from work during a period of continuous employment in a similar manner, regardless as to gender. Section 309 does not treat maternity leave or a pregnancy-related disability any differently than any other non-work-related type of leave or disability. In addition, Section 309 makes no gender classification regarding lay-offs, shutdowns, non work-related accidents or other causes that may prevent a workers' compensation claimant, either male or female, from working an entire 52 calendar-week period prior to his or her injury.

Rather, Section 309 classifies workers by length of employment in order to determine their AWW. Inasmuch as such a classification involves neither a suspect class nor a fundamental right or other "sensitive" classification, it must be upheld if it meets the "rational basis" test.

**5.** Act of October 27, 1955, P.L. 744, *as amended*, 43 P.S. § 955(a).

*McCusker.* This test requires only that the classification be designed to accomplish a legitimate government objective and that it does so in a manner that is neither arbitrary nor unreasonable. *Love.*

The purpose of Section 309's classification of employees, based on length of employment, is to establish an AWW that most accurately reflects the claimant's pre-injury earning experience as a gauge for determining the claimant's future earning potential where the claimant's wages are not fixed by the week, month or year. *Triangle Bldg. Ctr.* Clearly, using the claimant's length of employment to determine the claimant's AWW in such a situation is a rational method of achieving a legitimate government goal, *i.e.,* an accurate AWW to insure that the claimant receives the proper amount of benefits to which he or she is entitled to under the Act. As a result, we conclude that Section 309 of the Act does not violate Claimant's right to equal protection of the law under either the United States or Pennsylvania Constitutions. *Love.*

In view of the foregoing, we affirm the order of the Board.

### ORDER

AND NOW, this 16th day of March, 2004, for the reasons stated in the foregoing opinion, the May 29, 2003 order of the Workers' Compensation Appeal Board is hereby AFFIRMED.